UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff

Vs

TIMOTHY WARREN VALLIER

        Defendant
_____/

Case No. 1:16-CR-172-01

Hon. Gordon J. Quist
District Court Judge

DEFENDANT'S SENTENCING
MEMORANDUM & MOTION FOR
VARIANCE FROM ADVISORY
GUIDELINES

DEFENDANT'S SENTENCING MEMORANDUM
AND MOTION FOR VARIANCE FROM ADVISORY GUIDELINES

NOW COMES the defendant, Timothy W. Vallier, by and through his attorney, Richard E. Zambon, and for his Sentencing Memorandum and Motion to Vary from the Advisory Guidelines, says as follows:

The defendant and counsel have read and reviewed the presentence report prepared in this matter. The defendant agrees the criminal history score is zero which establishes a Criminal History Category of I. (PSI ¶ 87) Mr. Vallier is proud of the fact that he has no criminal history as either a juvenile or an adult, misdemeanor or felony. Quite often a defendant will have a non-scoreable criminal history which can include driving offenses or serious criminal offenses that are too old to score. In this case the presentence report shows that Mr. Vallier has had no Juvenile Adjudications (PSI ¶ 57), no Adult Criminal Convictions (PSI ¶ 58), no Other Criminal Conduct (PSI ¶ 60) and no Other Arrests (PSI ¶ 62).

Mr. Vallier is also proud of his employment history: he has worked steadily since college. In fact, Mr. Vallier had a paper route while still in middle school. Mr. Vallier held two

1

jobs from 2007 through 2008 while coaching and attending school. (PSI ¶ 83) Mr. Vallier was lastly employed as a janitor from 2009 until his arrest on July 8, 2016. (PSI ¶ 79-82)

Tim graduated from Grand Haven High School in 2004 with a 3.539 GPA. Tim is disappointed with himself in that he did not graduate from college despite obtaining 69 credits. From 2010 to 2012 Tim attended ITT Technical Institute. (PSI ¶ 83)

Tim enjoys the strong support of his father and sister, both of whom work and reside in the area. As shown by the attached letter from Tim's father, Kirk Vallier, Tim was raised primarily by his father: Tim's mother was addicted to drugs and alcohol and served a term of incarceration. As a result, Tim's parents divorced when he was about 3 years old. (See also PSI ¶ 66). Kirk's letter shows a different side of Tim; an intelligent, hardworking, generous young man.

Tim's sister, Elizabeth, also writes in support of Tim. Elizabeth says it best when she asks you to consider Tim's character during a time when he acted uncharacteristically. Elizabeth notes Tim's generosity in spending his time helping her around the house with mechanical and other problems. Elizabeth also notes their difficult upbringing due to the negatives influence of their mother.

The additional letters from Rachel Carey, Dave and Lisa TeRoller, Andy Bos and Pam Dykstra also show love and support for Tim. All of these letter writers know of Tim's legal situation. None condone his actions. These writers note the lengthy mandatory minimum time Tim is facing and ask you to consider sentencing Tim to no more than the mandatory minimum.

As the court is well aware from its many years' experience, a strong family support system is one of the best ways to prevent recidivism. Although nothing in the presentence report

suggests Tim is likely to re-offend, risk of recidivism is a factor the court is mandated to consider when imposing a sentence.

Tim has never abused drugs or alcohol. (PSI ¶ 77) Tim's mental health is good but he has suffered some depression since his incarceration. (PSI ¶ 76) Tim's physical health is not so good: he has back and leg problems which has resulted in nerve damage and muscle atrophy. Tim has numbness in his left leg and foot. Tim has been unable to obtain medical help for these problems since his arrest.

Tim's greatest regret in life is his involvement in the instant offense and the harm it has caused the victims. Tim is very concerned about the impact his conduct has had on the victims and has expressed great remorse for this. (PSI ¶ 21, see also the attached letters of support). Tim has clearly accepted responsibility for his actions. (PSI ¶ 21, 22, 52, 53).

Tim cooperated with law enforcement from the very beginning: he consented to a search of his house, car, computer and cell phone. Tim agreed to be interviewed by law enforcement and gave a full statement admitting his conduct. (PSI ¶ 13, 14). To spare the victims any further suffering and embarrassment Tim entered a guilty plea on September 28, 2016. (PSI ¶ 5). This was a mere eight days after the Felony Information was filed. (PSI ¶ 1) As more fully set forth below, Tim will move for a variance from the advisory sentencing guidelines based in part on his cooperation with the authorities, accepting responsibility for his actions, and pleading guilty quickly thereby avoiding the specter of a public trial.

The computation of the Offense Level (OL) for this first-time offender is especially troubling: the Total Offense Level is 43 which calls for a life sentence. Imposition of such a sentence would be substantively unreasonable. The facts underlying the offense conduct, as set forth in the presentence report indicate that Mr. Vallier placed a hidden camera in two high

school athletic changing rooms to video record minors dressing and undressing. (PSI ¶ 2) Additionally, the defendant possessed child pornography. (PSI ¶ 3).

Mr. Vallier was the coach of the high school girls' rowing team and placed the hidden video camera inside the girls' rowing team changing room four to five times a season (PSI ¶ 13) and inside the locker room of the freshman center building at the high school. These offenses occurred between 2012 and 2016. (PSI ¶ 15) A forensic examination of Mr. Vallier's computer also discovered saved child pornography. (PSI ¶ 16). The investigation identified a total of 62 victims in the 86 videos produced by Mr. Vallier. (PSI ¶ 18)

It is important to note the following information obtained from the pre-sentence report:

**"No evidence was discovered suggesting the defendant ever distributed any of the images. Each victim of the offense was interviewed by case agents; however, none of them reported any inappropriate physical contact by the defendant." (PSI ¶ 18)**

The probation officer calculated the guidelines for Count 1 as follows:

| | |
|---|---:|
| 26. Base offense Level:18 U.S.C. § 2251(a), USSG §2G2.1(a) | 32. |
| 27. Specific Offense Characteristics: USSG 2G2.1(b)(1) | +2 |
| 28. Victim Related Adjustments: None | 0 |
| 29. Adjustment for Role in the Offense: USSG §3B1.3 | +2 |
| 30. Adjustment for Obstruction of Justice: None | 0 |
| **Adjusted Offense Level** | **36** |

The Pseudo Counts, 2-62, resulted in the same Adjusted Offense Level:

| | |
|---|---:|
| 32. Base Offense Level: 18 U.S.C. § 2251(a), USSG §2G2.1 | 32 |
| 33. Specific Offense Characteristics: USSG §2G2.1(b)(1) | +2 |
| 34. Adjustment for Role in the Offense: USSG §3B1.3 | +2 |
| 35. Adjustment for Obstruction of Justice: None | 0 |
| **Adjusted Offense Level** | **36** |

Had Mr. Vallier been convicted only of the offense set forth in Count 1, and after adjusting the offense level for a 3-level reduction for Acceptance of Responsibility, his sentencing guideline range would have been 135-168 months (CH I, OL 33).

The sentencing guideline range of "life" based on CH I and OL 43 arises from the calculations determined by Count 2: Possession of Child Pornography:

| | |
|---|---:|
| 38. Base Offense Level: 18 U.S.C. § 2252A(a)(5)(B), USSG §2G2.2. | 18 |
| 39. Specific Offense Characteristics: USSG§ 2G2.2(b)(2) | +2 |
| 40. Specific Offense Characteristics: Pattern of Activity | +5 |
| 41. Specific Offense Characteristics: Use of a Computer | +2 |
| 42. Specific Offense Characteristics: 600+ images USSG § 2G2.2(b)(7)(D) | +5 |
| 43. Victim Related Adjustment: None | 0 |
| 44. Adjustment for Role in the Offense: None | 0 |
| 45. Adjustment for Obstruction of Justice: None | 0 |
| 46. Adjusted Offense Level (Subtotal): | **32** |

47. Multiple Count Adjustment:

| Group # | Adjusted Offense Levels | Units |
|---|---|---|
| Cts 1 & 2 | 36 | 1.0 |
| Pseudo Counts 2-62 | 36 or 34 | 61.0 |
| Total Number of Units: | | 5.0 |

| | |
|---|---:|
| 48. Greater of the Adjusted Offense Levels Above: | 36 |
| 49. Increase in Offense Level: | +5 |
| 50. Combined Adjusted Offense Level: | 41 |
| 51. Chapter Four Enhancement: USSG §4B1.5(a)(1)(B). | +5 |
| | 46 |
| 52. Acceptance of Responsibility: USSG §3E1.1(a). | -2 |
| 53. Acceptance of Responsibility: USSG §3E1.1(b). | -1 |
| 54. Total Offense Level: | **43** |

This court has dealt with numerous child pornography cases and is well aware of the guideline enhancements available in many such prosecutions. In looking at Mr. Vallier's conduct, it is important to note what enhancements were *not* included in Tim's guideline calculations: there were no enhancements for trafficking, no increase for pecuniary gain, no enhancement for exchange for valuable consideration or distribution to a minor, no increase for distribution to a minor intending to persuade the minor to engage in any illegal activity or to engage in prohibited sexual conduct and no material that portrayed sadistic or masochistic

conduct or depictions of violence.  All such enhancements are available under USSG2.2 but are missing here.  USSG2.2(b).

In fact, the 5-level enhancement for 600 or more images, (PSI ¶ 42) is artificially derived and based on Application Note 6 wherein each video is considered to have 75 images.

Mr. Vallier is facing a mandatory minimum sentence of 15 years for Count 1 together with a 5 year to life term of supervised release and will have to register as a sex offender.

The defendant contends that any sentence in excess of the 15-year mandatory minimum would be substantively unreasonable. A sentence is substantively unreasonable if it "cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 409 F.3d 208, 298 (2d Cir. 2007)). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser,* 514 F.3d 508, 520 (6th Cir.2008). *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013)

Nonetheless, the length of a sentence may, with or without far reaching post-release restrictions, make it excessively punitive or needlessly harsh. *See Rigas*, 583 F.3d at 123. Sentences that fall into these categories are "shockingly high" ones that serve no valid public purpose. *United States v. McGinn*, 787 F.3d 116, 129 (2d Cir. 2015).

The defendant knows the Court is well aware of the sentencing factors the court is required to consider pursuant to 18 USCA 3553(a) and will not repeat those factors here.  The defendant is asking the court to consider his lack of criminal history and his positive

6

characteristics as well as the lack of aggravating factors such as distribution, illegal contact or pecuniary gain when fashioning his sentence.

The defendant contends the enhancements that were applied are so ordinary and run-of-the-mill and all but inherent to the crime of conviction that an ordinary first-time offender is likely to qualify for a sentence of at least 135-168 months based on CHI, OL 33. This is the computed guideline range for Count 1 including a 3-level reduction for acceptance of responsibility.

The computed guideline range for Count 2, Level 43, equates to life (CHI, OL 43) (PSI ¶ 86) and fails to sufficiently distinguish between "the most dangerous offenders" who "distribute child pornography for pecuniary gain and who fall in higher criminal history categories" and those who collect for personal, non-commercial reasons. *United States v. Do*rvee, 616 F3d, 174 (2d Cir 2010) at 186–87. This range demonstrates "irrationality in § 2G2.2" because it is substantially more severe than for an adult "who intentionally seeks out and contacts a twelve-year-old on the internet, convinces the child to meet and to cross state lines for the meeting, and then engages in repeated sex with the child." *Id.* at 187. *United States vs Jenkins*, 14-4295-CR, 2017 WL 1371399, 2d Cir., April 17, 2017 citing *United States vs Dorvee*, 616 F3rd 174, (2d Cir 2010).

The 2d Circuit went on to say in *Jenkins*, supra,

"Since the Commission has effectively disavowed § 2G2.2, it should be clearer to a district court than when we decided *Dorvee* that this Guideline "can easily generate unreasonable results." 616 F.3d at 188. *Jenkins*, supra, at 13.

In *Jenkins*, supra, the 2d Circuit reversed a sentence of 225 months in prison and 25 years on Supervised Release after a jury found Jenkins guilty of one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and one count of transportation of child

7

pornography in violation of 18 U.S.C. § 2252A(a)(1), based on the government's proof at trial that Jenkins owned a collection of child pornography and brought it across the U.S.-Canada border on the way to a family vacation for his personal viewing. *Jenkin*s, at 2.  Additionally, Jenkins "attempted to transport thousands of images and videos of child pornography into Canada and then later failed to appear for [his] Canadian trial". *Jenkin*s at 2 of dissent. The 2d Circuit held that such sentence was substantively unreasonable. *Jenkins* at 24.

In the case before the court, the government does not claim Mr. Vallier transported pornography, used peer-to-peer sharing software, distributed images, or participated in chat rooms devoted to child pornography. Nor does the government allege that he contacted or attempted to contact a child or that he engaged in any "sexually dangerous behavior" separate from his crimes of conviction. The pertinent section of the guidelines, § 2G2.2, cannot "bear the weight assigned it" because the cumulation of repetitive, all-but-inherent enhancements yields a guideline range that fails to distinguish between Mr. Vallier's conduct and other offenders whose conduct was far worse. See *United States* vs *Cavera*, 550 F.3d at 80, 2d Cir., 2008. It is substantively unreasonable for the sentencing guidelines to apply the § 2G2.2 enhancements in a way that places Mr. Vallier at the top of the range with the very worst offenders where he does not belong.

The size of Mr. Vallier's collection of child pornography was not extensive as compared to other cases and like-situated offenders.  As set forth above, the number of images attributed to Mr. Vallier, "in excess of 600" (PSI ¶ 42) is due to the artificially computed increase in images by which one video is the equivalent of 75 images.

Mr. Vallier did not refuse to accept responsibility, or attempt to blame others, did not show a disrespect for the law, and there is little or no likelihood of his reoffending. A sentence of

180 months, the statutorily mandated minimum, would reflect the seriousness of Mr. Vallier's offenses, promote respect for the law, provide adequate deterrence, and protect the public.

In fact, a sentence in excess of 180 months would be a longer sentence than that called for by the guidelines without the run-of-the-mill, all-but-inherent enhancements. As set forth above and in Paragraph 38 of the presentence report, the Base Offense Level for Count 2 is 18. The guideline range for CHI, OL 18 is 27-33 months. With a 3-level reduction for Acceptance of Responsibility the guideline range is 18-24 months. However, the Probation Officer is required to apply the appropriate guideline enhancements where applicable.

The Probation Officer's starting point was U.S.S.G. § 2G2.2, the guideline governing child pornography offenses. In *United States v. Dorvee*, it was held that this Guideline "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." 616 F.3d 174, 184 (2d Cir. 2010). However, the "run-of-the-mill" and "all-but-inherent" enhancements result in an increase in the Offense Level from 18 to 32. These common enhancements included the following:

> (PSI ¶39): Prepubescent minor or a minor who had not attained the age of 12 years, increase by two levels. USSG§ 2G2.2(b)(2)
> (PSI ¶40): Pattern of activity involving the sexual abuse or exploitation of a minor, increase by five levels
> (PSI ¶41): Use of a computer . . . to view the material, increase by two levels
> (PSI ¶42): The offense involved 600 or more images increase by five levels. USSG § 2G2.2(b)(7)(D)

Even with these enhancements the guideline range would be 121-151 months, (CH I, OL 32) or 87-108 months after a 3-level reduction for Acceptance of Responsibility. (CH I, OL 29) However, the Probation Officer was required to "group" the counts (PSI ¶47) which resulted in a 5-level increase to an Offense Level of 41. (PSI ¶50). Combined with another 5-level "run-of-

the-mill" enhancement of "Pattern of Activity" and the Offense Level becomes 46. Even after a 3-level reduction for Acceptance of Responsibility, Mr. Vallier's Offense Level is 43 which is the highest level allowed under the guidelines. Mr. Vallier's history and characteristics do not call for such an outrageous result.

The purposes of retribution, deterrence, and incapacitation are important, and Tim in no way condones his consumption of child pornography. However, every Guidelines sentence is limited by § 3553(a)'s "parsimony clause," which instructs a district court to impose a sentence "sufficient, but not greater than necessary," to achieve § 3553(a)(2)'s goals. District courts are required to carefully consider on an individualized basis "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Further, those considerations must be applied in the context of the other § 3553(a) factors. After the other factors are considered, upward adjustments may be appropriate for the sake of retribution, deterrence, and incapacitation. However, a sentence in excess of the mandatory minimum of 15 years would unreasonably regard Mr. Vallier as the worst of the worst.

Whether a child pornography offender has had or has attempted to have contact with children is an important distinction. "The failure to distinguish between contact and possession-only offenders [is] questionable on its face," and this failure "may go against the grain of a growing body of empirical literature indicating that there are significant, § 3553(a)-relevant differences between these two groups." *United States v. Apodaca*, 641 F.3d 1077, 1083 (9th Cir. 2011. Mr. Vallier's conduct is relatively less culpable because he was viewing his collection for his own personal use, rather than carrying child pornography to sell or distribute to others.

Mr. Vallier, an offender with no criminal history points will be at least 46 years old when he is released from his lengthy prison sentence. Mr. Vallier will be a low–not a high–risk to

reoffend based on his history and characteristics and the facts of this offense. Although it would be well within a district court's discretion to increase a sentence based on a likelihood of reoffending, there must, in a case like this, be some support in the record for that conclusion, such as, for example, a record of previous convictions or previous attempts to harm children. Here there are no such aggravating factors.

A sentence in excess of 180 months for a first-time offender who never spoke to, much less approached or touched, a child or transmitted explicit images to anybody, would be unreasonable. Instead the court is encouraged to sentence Mr. Vallier to the 15-year mandatory minimum and a lengthy period of supervised release.  Such a sentence would protect the public, deter Mr. Vallier, and otherwise vindicate the sentencing factors outlined by the Guidelines. See for example *United States v. Stall*, 581 F.3d 276, 285 (6th Cir. 2009) citing *United States v. Perrin,* 478 F.3d 672, 679 (5th Cir.2007)

The probation officer who prepared the presentence report recognized the unfairness and disparity contained in scoring Tim's sentencing guidelines.  The probation officer identified, in Part F of the report, factors that may warrant a sentence outside the advisory guideline range. These factors include noting that a 50-year sentence would essentially equate to a life sentence for a first-time offender who has no prior criminal record, whose voyeurism never progressed to attempting to engage in criminal physical contact, and who never shared or distributed the material he produced.

RELIEF SOUGHT

The defendant respectfully requests the court consider granting his motion to vary from the advisory guidelines and sentence him to no more than the mandatory minimum of 15 years. The defendant further requests the court to recommend to the Bureau of Prisons that he receive educational and vocational training and counseling while incarcerated. If the court is unable to recommend such placement, the defendant respectfully requests the court recommend that the Bureau of Prisons place the defendant in a facility near his family in Michigan.

Dated: May 9, 2017            /s/Richard E. Zambon, P31927
                              Richard E. Zambon, PLLC
                              202 Waters Bldg.
                              161 Ottawa Ave., NW
                              Grand Rapids, MI 49503
                              (616) 456-7831
                              rick@zambonlaw.com